# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **BLUE SKY NETWORKS, LLC,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:17-cv-00156** |
| | § | |
| | § | |
| **HUAWEI DEVICE USA, INC, and** | § | |
| **HUAWEI DEVICE CO. LTD.,** | § | |
| **Defendants** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Blue Sky Networks, LLC files this Original Complaint against Huawei Device USA, Inc. and Huawei Device Co. Ltd. (collectively, "Defendants" or "Huawei") for infringement of U.S. Patent Nos. 6,088,398 (the "'398 Patent"); 6,484,027 (the "'027 Patent"); 6,865,372 (the "'372 Patent"); 7,693,542 (the "'542 Patent"); 7,885,684 (the "'684 Patent"); 8,019,381 (the "'381 Patent"); 8,265,691 (the "'691 Patent"); 8,346,169 (the "'169 Patent").

## THE PARTIES

1.      Plaintiff and patent owner Blue Sky Networks, LLC ("Blue Sky") is a Texas limited liability company with its headquarters and principal place of business at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2.      Defendant Huawei Device USA, Inc. is a Texas corporation headquartered in this judicial district at 5700 Tennyson Parkway, Suite 500, Plano, TX 75024 and may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900,

Dallas, TX 75201-3136.

3.      Defendant Huawei Device Co., Ltd., is a company headquartered in Shenzhen, Quandong Province of the People's Republic of China.  Huawei Device Co. Ltd. has a principal place of business located at Building 2, Section B, Huawei Industrial Base, Bantian, Longgang Dist., Shenzhen, Guangdong, 518129 P.R.C., and may be served through its domestic entity at 5700 Tennyson Parkway, Suite 500, Plano, TX 75024.

## JURISDICTION AND VENUE

4.      This is a patent suit brought under the United States Patent Act, namely 35 U.S.C. §§ 271, 281, and 284-285, among other laws.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Huawei is headquartered and does business in this judicial district, selling and delivering mobile phone products into this judicial district, advertising products for sale to potential customers in this district, and instructing end users how to use Huawei products in this judicial district.  Huawei has committed acts of infringement in this judicial district and has purposely transacted business in this judicial district involving the accused products.

6.      Huawei markets mobile phones, tablets, PCs, and wearables direct to consumers via its website (http://consumer.huawei.com/us/index.htm) and through mobile network operators and retail outlets including Verizon, MetroPCS, Best Buy, Walmart, and Amazon.com.

7.      Huawei is subject to this Court's specific and general personal jurisdiction

because it resides in this judicial district and, alternatively, pursuant to due process and/or the Texas Long-Arm Statute, due at least to its substantial business in this State and judicial district, including at least part of its infringing activities and regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

## BLUE SKY PATENTS

8.     Blue Sky is the owner by assignment of all right, title, and interest in and to the following "Asserted Patents":

- U.S. Patent No. 6,088,398 (the "'398 Patent");

- U.S. Patent No. 6,484,027 (the "'027 Patent");

- U.S. Patent No. 6,865,372 (the "'372 Patent");

- U.S. Patent No. 7,693,542 (the "'542 Patent");

- U.S. Patent No. 7,885,684 (the "'684 Patent");

- U.S. Patent No. 8,019,381 (the "'381 Patent");

- U.S. Patent No. 8,265,691 (the "'691 Patent"); and

- U.S. Patent No. 8,346,169 (the "'169 Patent").

9.     Blue Sky possesses all rights of recovery under the Asserted Patents.

### The '398 OFDM Patent

10.     Mattias Wahlqvist, Roger Larsson, and Christer Östberg invented the claimed subject matter of the '398 Patent while working for Telia Research, a technology research arm of Telia Company AB, which dates to 1853 and is the largest mobile network operator

in Sweden.

11.     The '398 Patent, as its title indicates, relates to "Orthogonal Frequency Division Multiplex Systems."  OFDM is a modulation format used in many of the latest wireless telecommunication systems and standards including LTE.

12.     By using closely spaced carrier signals, OFDM signals are capable of high data rates.  A related advantage of OFDM is minimization of interference between closely spaced carriers due to their orthogonality.

13.     In OFDM systems, the signal is pulse-shaped to suppress side lobes in order to reduce guard bands and the space between carriers.

14.     Recognizing the fact that pulse shaping breaks orthogonality and results in inter-symbol interference (ISI), the inventors introduced equalization to compensate for ISI.

15.     In allowing the claims of the '398 Patent, the Examiner noted the absence in the prior art of "the receiver for the OFDM signals subjected to pulse shaping and every other subcarrier omitted, which receiver can recover data at a rate better than one-half the rate of an ordinary OFDM receiver with half the subcarriers absent due to an equalizer and the reduction of guard bands."

16.    Figure 5 from the '398 Patent depicts schematically an OFDM system employing the claimed subject matter:



17.    In operation, receivers in mobile devices utilizing OFDM modulation and implementing the claimed subject matter equalize channels to maintain orthogonality so the received signal can be correctly decoded.

18.    The United States Patent and Trademark Office issued the '398 Patent on July 11, 2000, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

19.    The '398 Patent is valid and enforceable.

20.    A copy of the '398 Patent is attached at Exhibit A.

**The Enhanced Handset Patents**

21.     "Dan Mauney, Marc Sullivan, Charles Green, and Steve Harbin invented the claimed subject matter of the '027, '372, '542, '684, '381, '691, and '169 Patents (the "Enhanced Handset Patents") while working for SBC Technology Resources, Inc. in Austin, Texas.  SBC Technology Resources, later renamed SBC Laboratories in 2003, was the research and development arm of SBC Communications Inc., which acquired AT&T in 2005.

22.     The Enhanced Handset Patents, titled "Enhanced Wireless Handset, Including Direct Handset-to-Handset Communication Mode, were duly and legally issued by the United States Patent and Trademark Office after full and complete examinations of each.

23.     The Patent Examiner found each set of allowed claims to recite patentable subject matter and each respective application meeting all requirements for patentability.

24.     In allowing the claims of the '381 Patent, for example, the Examiner found that "[n]one of the cited prior art of record teaches an apparatus and method for short-range wireless communication between an object and an apparatus comprising transmitting step and detecting step as specified in claims (i.e., claims 17 and 37)."

25.     The Asserted Patents are directed to wireless handset and mobile devices for operation on a wireless network (e.g., a cellular, PCS, or WiFi network) and wireless short-range direct communication with other wireless handsets (i.e., direct handset-to-handset communication), paging devices, and other communication devices.

26.     To facilitate set-up, the Asserted Patents describe find features (e.g., that

assist a handset operator in determining what objects, including other handset users, are located within the handset's operating range), memory for maintaining a list of available devices for communicating via the short-range wireless network, and short-range messaging.

27.     In operation, handsets described in the Asserted Patents scan, find, register, and communicate with available devices and may present to a user a list from which the user may select devices to pair with a handset to enable two-way communication via the short-range wireless network independent of a cellular or other wireless network.

28.     The Asserted Patents further describe how embodying handsets may simultaneously communicate on short range wireless network(s) and a wide-area wireless network such as cellular or PCS systems.

## A.     United States Patent No. 6,484,027

29.     The United States Patent and Trademark Office issued the '027 Patent on November 19, 2002, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

30.     The '027 Patent is valid and enforceable.

31.     A copy of the '027 Patent is attached at Exhibit B.

## B.     United States Patent No. 6,865,372

32.     The United States Patent and Trademark Office issued the '372 Patent on March 8, 2005, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

33.     The '372 Patent issued from a division of application No. 09/094,600 from

which the '027 Patent issued.

34.     The '372 Patent is valid and enforceable.

35.     A copy of the '372 Patent is attached at Exhibit C.

**C.     United States Patent No. 7,693,542**

36.     The United States Patent and Trademark Office issued the '542 Patent on April 6, 2010, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

37.     The '372 Patent issued from a continuation of the application that issued as the '372 Patent, which was a division of application No. 09/094,600 from which the '027 Patent issued.

38.     The '542 Patent is valid and enforceable.

39.     A copy of the '542 Patent is attached at Exhibit D.

**D.     United States Patent No. 7,885,684**

40.     The United States Patent and Trademark Office issued the '684 Patent on February 8, 2011, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

41.     The '684 Patent issued from a continuation of the application that issued as the '542 Patent and is, therefore, related to the '372 and '027 Patents.

42.     The '684 Patent is valid and enforceable.

43.     A copy of the '684 Patent is attached at Exhibit E.

**E.     United States Patent No. 8,019,381**

44.     The United States Patent and Trademark Office issued the '381 Patent on

September 13, 2011, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

45.     The '381 Patent issued from a continuation of the application that issued as the '684 Patent and is, therefore, related to the '372, '027, and '542 Patents.

46.     The '381 Patent is valid and enforceable.

47.     A copy of the '381 Patent is attached at Exhibit F.

**F.     United States Patent No. 8,265,691**

48.     The United States Patent and Trademark Office issued the '691 Patent on September 11, 2012, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

49.     The '691 Patent issued from a continuation of the application that issued as the '381 Patent and is, therefore, related to the '372, '027,'542, and '684 Patents.

50.     The '691 Patent is valid and enforceable.

51.     A copy of the '691 Patent is attached at Exhibit G.

**G.     United States Patent No. 8,346,169**

52.     The United States Patent and Trademark Office issued the '169 Patent on January 1, 2013, after a complete examination and upon finding the claimed subject matter novel and the application meeting all requirements for patentability.

53.     The '169 Patent is related to the other Asserted Patents.

54.     The '169 Patent is valid and enforceable.

55.     A copy of the '169 Patent is attached at Exhibit H.

## HUAWEI PRODUCTS

56.     Huawei makes, imports, sells, offers to sell, distributes, markets and uses wireless handsets (i.e., mobile phones), Tablets, wearables, personal computers, and other wireless electronic devices.

57.     Huawei wireless handsets include the following series: Mate, P Series, G Series, Y Series, and Nexus Series.

58.     Specific wireless handset models by Huawei include the: GX8, P8lite, P10, P10 Plus, P10 Lite, P8 Lite, P9, P9 Plus, Honor 8 Pro, Honor Magic, Enjoy 5s, 6 and 6s, Mate 9, Mate 9 Pro, Mate 9 Porsche Design, Nova, G9, Nova Plus, Honor Pad, 5c, 6X, 7, Bee, 4C, Holly 3, Holly 2 Plus, 5A, 8, and Note 8, Y3II, Y5II, Y6, Y6 Pro, Y 635, or 6X, 7, Bee, 4C ("Accused Huawei Phones").

59.     Pictured below are images from Huawei's website showing the Mate 9, Nexus 6P, and GX8 wireless handsets.



HUAWEI Mate 9          Nexus 6P          HUAWEI GX8

60.     Huawei Tablets and PCs include the MateBook and MediaPad models.

61.     Specific tablets and PCs include the: MateBook, MateBook Signature

Edition, MediaPad M3, M3 8.4, MediaPad T2 10.0 Pro, T2 7.0 Pro, T2 7.0, MediaPad X2, MediaPad M2 8.0, MediaPad M2 10.0, M2 7.0 MediaPad T1 7.0, and T1 10.

62.     Pictured below are images from Huawei's website showing MateBook and MediaPad PC and Tablet models.





HUAWEI MateBook          MediaPad M2 10.0          MediaPad T1 7.0

63.     Huawei wearables feature wireless connectivity and communication functionality.

64.     Huawei presently markets the Huawei Fit, TalkBand B2, and Huawei Watch.

65.     Shown below are examples of the Huawei Watch:



66.     Accused Huawei Phones, Tablets and PCs, and wearables, and Huawei electronic devices having similar functions include hardware, software, radios and associated communication hardware for performing identification, pairing, and communication via short-range wireless networking protocols.  Generally, Huawei features Bluetooth short-range wireless functionality for practicing the claims of the Asserted Patents.

67.     Accused Huawei LTE-compliant devices rely on OFDM.

68.     Accused Huawei LTE-compliant devices have receivers that contain an equalizer to compensate for sources of frequency offset between the transmitter and receiver in the device.  The receiver equalizes and synchronizes the signal to ensure the frequency offset is within a permissible error range.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 6,088,398

69.     Blue Sky incorporates by reference paragraphs 1-68 and re-alleges them as if stated here.

70.     Huawei directly and/or indirectly infringes at least claim 13 of the '398 Patent.

71.     Huawei Accused Phones and LTE-compliance electronic devices embody claim 13 of the '398 Patent and are designed and intended to operate on OFDM systems as recited, for example, in claim 1.

72.     Huawei Accused Phones and LTE-compliant devices include receivers with equalizers that compensate for loss of orthogonality caused by pulse shaping.

73.     Huawei instructs end users to use LTE-complaint device communication systems to send and receive OFDM data.

74.     Huawei tests LTE-compliant devices to ensure interoperability and compliance with the LTE standard.

75.     Huawei Accused LTE-compliant devices perform synchronizsation procedures including Cell search by which the device acquires time and frequency synchronization with a base station in the cell.

76.     An equalizer in the Huawei Accused LTE-compliant devices corrects frequency error to ensure orthogonality so the received signal is correctly decoded.

77.     Huawei encourages, aids, and directs end users of the Accused LTE-compliant devices to use and operate them on LTE networks.

78.     Huawei is on notice of the infringing products, features, and how end users of the Accused Huawei LTE-compliant devices operate them on LTE networks and use the claimed apparatus.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 6,484,027

79.     Blue Sky incorporates by reference paragraphs 1-78 and re-alleges them as if stated here.

80.     Huawei directly and indirectly infringes at least claims 5, 6, 7, and 8 of the '027 Patent.

81.     The Accused Products embody the claims of the '027 Patent including representative claim 5.

82.     Accused Products are wireless handsets with enhanced operating features including the ability to locate other devices within range.

83.     In normal operation, the Accused Products initiate a find feature to discover any Bluetooth enabled devices (e.g., peripherals, phones, computers, etc.) within range of the Accused Product.

84.     In an Accused Product that operates using Bluetooth BR/EDR, the Accused Phone enters the page sub-state to determine whether availabe devices are within range, and the Accused Product may transmit a train of page messages until a response is received from a potential target device.

85.     An Accused Product in turn detects any response messages from available Bluetooth devices (e.g., a Bluetooth headset or speaker).  The Accused Product collects and stores information received within the inquiry response messages and uses that information to compile a list of discovered or available Bluetooth devices.

86.     When a connectable device recieves a page request on its page scan channel from an Accused Product, it enters into a sequence of exchanges with the handset, which enters into a master response routine.

87.     A link key is created and exchanged during the pairing process.  Once an Accused Product is paired with a connectable device, higher level initialization procedures are invoked to update a stored list of paired devices.

88.    An Accused Product lists "available" devices that are detected to be within range.

## Transferring data through Bluetooth

### Turning on Bluetooth and pairing your phone with another Bluetooth device

1. On the home screen, touch ⚙ **Settings**.
2. Under **All**, touch **Bluetooth**.
3. Touch **Turn on Bluetooth** to turn on Bluetooth. Then your phone will automatically search for and display available Bluetooth devices.

51

Network and sharing

4. Touch a device and follow the onscreen instructions to pair your phone with it.

To unpair the two devices, touch ⓘ next to the paired device, and touch **Unpair**.

89.    The user selects an "available" device for connection.

## Sharing a file using Bluetooth

To exchange data with another Bluetooth device, turn on Bluetooth on both devices and make sure they are both discoverable.
Touch and hold the file you want to send and then touch **Share > Bluetooth** on the displayed window. Your phone will automatically search for and display available devices. Select a device to receive your file.

90.     The screenshot below shows the Huawei Ascend II in normal "pairing" operation:



91.     Once the device is connected to the Huawei device, it is designated as a "paired" device.

92.     Huawei instructs end users to use the phone's Bluetooth capability to infringe the asserted claims.

93.     Huawei encourages, aids, and directs end users of the Accused Products to use and operate them, consistent with Huawei's instructions, to perform the asserted method claims.

94.     Huawei is on notice of the infringing products, features, and how end users of the Accused Products operate them to perform the claimed methods and use the claimed apparatuses.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 6,865,372

95.     Blue Sky incorporates by reference paragraphs 1-94 and re-alleges them as if stated here.

96.     Huawei directly and indirectly infringes at least claims 1, 3, 6, 8, 11, 13, 16, and 18 of the '372 Patent.

97.     Huawei makes, uses, sells, offers for sale, and imports mobile phones that embody the claims of the U.S. Patent No. 6,865,372 including representative claim 1.

98.     Huawei Accused Phones and electronic devices communicate with peripherals using relevant short-range technologies including but not limited to Bluetooth BR/EDR.

99.     The Huawei P8lite, for example, features Bluetooth 4.0.



100.    The P8lite is capable of performing a Bluetooth Device Discovery procedure for retrieving the Bluetooth device address, clock, class-of-device field, and used page scan mode from discoverable devices located near the P8lite.

101.    In accordance with recitations of claim 1 of the 372 Patent, an Accused

Huawei Phone is enabled to pair or communicate with at least two distinct Bluetooth peripherals using two frequency channels.

102.   Accused Huawei Phones receive an identifier (e.g., name) from each paired (or available) peripheral.  The Accused Phone displays the identifier in a list of paired or available devices.

103.   Accused Huawei Phones contain short-range wireless transmitters for short-range communications.

104.   Accused Phones enter into the inquiry substate and transmit inquiry messages (e.g., inquiry data packets) as part of the discovery and pairing process with nearby compatible Bluetooth devices (e.g., wireless headset, Bluetooth speaker, etc.).

105.   An Accused Phone that embodies at least claim 1 of the '372 Patent consecutively transmits, to two Bluetooth peripherals, inquiry messages over at least two frequency channels.  Based on Bluetooth protocols, the Accused Phone may determine the frequency channels by an inquiry hopping sequence.

106.    The screenshot below shows a Huawei phone scanning for available devices:



Ensure the checkmark next to "Bluetooth" is green. Next, touch "Bluetooth settings" to name your device and manage connections.

107.    If discoverable, the peripherals receive the inquiry messages and in turn generate responses.  Accordingly, an Accused Phone contains a receiver to receive the inquiry response messages from Bluetooth peripherals within range of the Accused Phone.

108.    According to Bluetooth protocols, a peripheral's response message may contain information including device address, clock, class of device, and device name for each respective peripheral.

109.    After receiving the response messages, an Accused Phone dynamically creates and updates a list of detected peripherals within range of the Accused Phone.  The list includes identifiers (e.g., names) for detected (e.g., available or paired) objects.  The list includes the first object identifier and the second object identifier (e.g., two device names)  for cases in which inquiry packets are sent over two frequency channels to two

separate peripherals, and the two peripherals send response data packets including corresponding object identifiers (e.g., a device name for each peripheral).

110.    Huawei instructs end users to use the phone's Bluetooth capability to infringe the asserted claims.

111.    Huawei encourages, aids, and directs end users of the Accused Phones to use and operate them, consistent with Huawei's instructions, to perform the asserted method claims.

112.    Huawei is on notice of the infringing products, features, and how end users of the Accused Phones operate them to perform the claimed methods and use the claimed apparatuses.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 7,693,542

113.    Blue Sky incorporates by reference paragraphs 1-112 and re-alleges them as if stated here.

114.    Huawei directly and indirectly infringes at least claims 1, 2, 3, 8, 9, 10, 11, 12, 17, and 18 of the '542 Patent.

115.    Huawei makes, uses, sells, offers for sale, and imports mobile phones and other electronic devices that embody the claims of the '542 Patent including representative claim 10.

116.    Accused Products communicate with peripherals using relevant short-range technologies including but not limited to Bluetooth Basic Rate/Enhanced Data Rate (BR/EDR).

117.    In accordance with claim 10, a Huawei Bluetooth-enabled device is enabled to pair with third-party peripherals over a first network (e.g., a Bluetooth network) while the phone/device maintains a telephone call over a second network (e.g., cellular network).

118.    By way of example, in one scenario an Accused Phone that is conducting a call over a 4G, 3G, LTE, or Wi-Fi network sends a query message (e.g., an inquiry data packet) to a Bluetooth peripheral (e.g., a hands-free headset) to determine whether the peripheral is present and within range.  If the peripheral is in a discoverable mode (e.g., general discoverable mode), the Accused Phone receives a response (e.g., inquiry response message) from the Bluetooth peripheral.

119.    In the Accused Products, two discoverability modes are defined: limited discoverable mode and general discoverable mode.

120.    The following diagram illustrates the discovery procedure carried out by the Accused Products:



121.    The response, the Accused Product may include the peripheral's name, address, clock information, or class of device.

122.    After receiving a response from a peripheral, the device generates and displays a list of discovered devices.

123.    The list of available, discovered devices is displayed to the user of the device on the screen via the Huawei user interface.

124.    Huawei encourages, aids, and directs end users of the Accused Products to use and operate them, consistent with Huawei instructions, to perform the asserted method claims.

125.    Huawei instructs end users to use Huawei products' Bluetooth capability to infringe the asserted claims.

126.    Huawei is on notice of the infringing products, features, and how end users of the Accused Products operate them to perform the claimed methods and use the claimed apparatuses.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 7,885,684

127.    Blue Sky incorporates by reference paragraphs 1-126 and re-alleges them as if stated here.

128.    Huawei directly and indirectly infringes at least claims 1, 2, 3, 8, 9, 10, 14, 15, 16, 17, 18, 19, 24,25,26,29, 30, 31, and 32 of the '684 Patent.

129.    Huawei makes, uses, sells, offers for sale, and imports mobile phones that embody the claims of the '684 Patent including representative claim 17.

130.    Accused Phones communicate with peripherals using relevant short-range technologies including but not limited to Bluetooth Basic Rate/Enhanced Data Rate (BR/EDR).

131.    In accordance with claim 17, Huawei phones have a transceiver configured to transmit inquiry messages to identify available communication devices.

132.    Huawei phones are enabled to pair with third-party peripherals over a first network (e.g., a Bluetooth network) while the phone maintains a telephone call over a second network (e.g., cellular network).

133.    Huawei phones receive responses from available communication devices and generate a list of them that is displayed to the user.

134.    By way of example, in one scenario a Huawei phone that is conducting a call over a 4G, 3G, LTE, or Wi-Fi network sends a query message (e.g., an inquiry data packet) to a Bluetooth peripheral (e.g., a hands-free headset) to determine whether the peripheral is present and within range.   If the peripheral is in a discoverable mode (e.g., general discoverable mode), the Huawei phone receives a response (e.g., inquiry response message) from the Bluetooth peripheral.

135.    In the Huawei phones, two discoverability modes are defined: limited discoverable mode and general discoverable mode.

136.    The following diagram illustrates the discovery procedure carried out by the Accused Phones:



137.    The list of available, discovered devices is displayed to the user of the Huawei phone on the screen via the user interface.

138.    Huawei encourages, aids, and directs end users of the Accused Phones to use and operate them, consistent with Huawei's instructions, to perform the asserted method claims.

139.    Huawei instructs end users to use the phone's Bluetooth capability to infringe the asserted claims.

140.    Huawei is on notice of the infringing products, features, and how end users of the Accused Phones operate them to perform the claimed methods and use the claimed apparatuses of the '684 Patent.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 8,019,381

141.    Blue Sky incorporates by reference paragraphs 1-140 and re-alleges them as if stated here.

142.    Huawei directly and indirectly infringes at least claims 1, 2, 3, 4, 6, 11, 12, 13, 16, 20, 21, 22, 23, 24, 26, 31, 32, 33, 36, 39, and 40 of the '381 Patent.

143.    Huawei makes, uses, sells, offers for sale, and imports mobile phones that embody the asserted claims of the '381 Patent including representative claim 21.

144.    Huawei phones communicate with peripherals using relevant short-range technologies including but not limited to Bluetooth BR/EDR.  In accordance with claim 21, an Accused Huawei Phone is enabled to pair with third-party peripherals over a first network (e.g., a Bluetooth network) while the phone maintains a communication over a second network (e.g., Wi-Fi network or cellular network).

145.    For example, a Huawei phone pairs with a Bluetooth-enabled headset while conducting a voice call, data download, data upload, or synchronization over a Wi-Fi or cellular (e.g., 3G, 4G, LTE) network.

146.    In normal operation, the Accused Huawei Phones transmit an inquiry message (e.g., an inquiry data packet) to a Bluetooth peripheral (e.g., a hands-free headset) to determine whether the peripheral is within range.

147.    If the peripheral is in a discoverable mode (e.g., general discoverable mode), the Accused Huawei Phone receives a response (e.g., inquiry response message) from the Bluetooth peripheral.

148.    In some cases, the response includes the peripheral's name, address, clock information, and class of device.  After receiving a response from a peripheral, the Huawei phone generates and displays a list of discovered or available devices.

149.   Huawei encourages, aids, and directs end users of the Accused Huawei Phones to use and operate them, consistent with Huawei's instructions, to perform the asserted method claims.

150.   Huawei instructs end users to use the phone's Bluetooth capability to infringe the asserted claims.

151.   Instructions are provided by Huawei to end users through its online support site.

152.   Huawei instructs and encourages users to make voice calls with Bluetooth headsets to which voice communications in the form of digital data are conveyed.

153.   The Accused Huawei Phones provide a user a list of available devices.

154.   Huawei is on notice of the infringing products, features, and how end users of the Accused Phones operate them to perform the claimed methods and use the claimed apparatuses.

## COUNT VII
## INFRINGEMENT OF U.S. PATENT NO. 8,265,691

155.   Blue Sky incorporates by reference paragraphs 1-118 and re-alleges them as if stated here.

156.   Huawei directly and indirectly infringes at least claims 1, 2, 3, 7, 8, 11, 12, 13, 17, and 18 of the '691 Patent.

157.   Huawei makes, uses, sells, offers for sale, and imports mobile phones that embody the asserted claims of the '691 Patent including representative claim 11.

158.   Accused Huawei Phones communicate with peripherals using relevant short-

range technologies including but not limited to Bluetooth BR/EDR using transceivers in the Accused Huawei Phones.

159.   In normal operation, the Accused Huawei Phones transmit an inquiry message (e.g., an inquiry data packet) to a Bluetooth peripheral (e.g., a hands-free headset) to determine whether the peripheral is within range.

160.   If the peripheral is in a discoverable mode (e.g., general discoverable mode), the Accused Huawei Phone receives a response (e.g., inquiry response message) from the Bluetooth peripheral.

161.   After receiving a response from a peripheral, the Accused Huawei Phone generates and displays a list of discovered or available devices.

162.   Once paired, Accused Huawei Phones operate in the connected state and exchange messages over one of two channels reserved for communication between them.

163.   The physical channel is subdivided into time units known as slots, and data is transmitted between Bluetooth devices in packets positioned in these slots.

164.   Other BR/EDR physical channels are used for discovering other Bluetooth devices.

165.   In order support multiple concurrent communication sessions, the Accused Huawei Phones use time division multiplexing between channels.

166.   Huawei encourages, aids, and directs end users of the Accused Huawei Phones to use and operate them, consistent with Huawei's instructions, to perform the asserted method claims.

167.   Huawei instructs end users to use the phone's Bluetooth capability to infringe

the asserted claims.

168.    The Accused Huawei Phones provide a user a list of available devices.

169.    Huawei is on notice of the infringing products, features, and how end users of the Accused Huawei Phones operate them to perform the claimed methods and use the claimed apparatuses of the '691 Patent.

**COUNT VIII**
**INFRINGEMENT OF U.S. PATENT NO. 8,346,169**

170.    Blue Sky incorporates by reference and re-alleges them as if stated here paragraphs 1-169.

171.    Huawei directly infringes at least claims 1, 2, 3, 5, 6, 8, 9, 10, 12, 13, and 15 of U.S. Patent No. 8,346,169.

172.    Huawei makes, uses, sells, offers for sale, and imports mobile phones that embody the claims of the '169 Patent including representative claim 8.

173.    Accused Huawei Phones communicate using relevant short-range technologies including but not limited to Bluetooth Basic Rate/Enhanced Data Rate (BR/EDR).

174.    In accordance with recitations of claim 8, Accused Huawei Phones pair with third-party peripherals and add selected peripherals to a list of paired devices stored on the Accused Phones.

175.    By way of example, in one scenario a user presses and temporarily holds a button (e.g., the call control/power button on a Bluetooth headset) to initiate pairing with an Accused Huawei Phone.  In response, an Accused Phone receives a pair request message

(e.g., a paging message request) over a channel shared with other Bluetooth devices (e.g., a time-division multiplexed channel).  In response to the pair request, the Accused Huawei Phone prompts a user to add the Bluetooth peripheral to a list of authorized devices.  If the user approves pairing the Accused Huawei Phone with the peripheral, the user selects on the Accused Huawei Phone to accept the pair request and add the peripheral to a list of authorized devices on the Accused Huawei Phone.

176.    Huawei is on notice of the infringing products, features, and how end users of the Accused Huawei Phones operate them to perform the claimed methods and use the claimed apparatuses.

177.    Huawei encourages, aids, and directs end users of the Accused Huawei Phones to use and operate them, consistent with Huawei's instructions, to perform the asserted method claims.

178.    Huawei instructs end users to use the phone's Bluetooth capability to infringe the asserted claims.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

179.    Huawei is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically

stored information (hereafter collectively referred to as "Potential Evidence").

180.   As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.   These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees if Defendant's electronically stored information resides there.

181.   Huawei is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses.   To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notifies its agents and employees to halt and/or supervise the auto-

delete functions of Defendant's electronic systems and refrains from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## NOTICE

182.    Blue Sky does not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents.

183.    Blue Sky has undertaken reasonable efforts as required to comply with the notice requirements of 35 U.S.C. § 287.

## JURY DEMAND

Blue Sky hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

Blue Sky prays for the following relief:

a. That Huawei be summoned to appear and answer;

b. That the Court enter judgement in favor of Plaintiff that Huawei has infringed each and every one of the Asserted Patents;

c. That this is an exceptional case under 35 U.S.C. §285;

d. That the Court grant Blue Sky judgment against Huawei for all actual, consequential, special, punitive, exemplary, increased, and/or statutory damages, including if necessary, an accounting of all damages; pre and post-judgment

interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;  and

e. That Blue Sky be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: March 10, 2017

Respectfully submitted,

**TAYLOR DUNHAM AND RODRIGUEZ LLP**
301 Congress Ave., Suite 1050
Austin, Texas 78701
512.473.2257 Telephone
512.478.4409 Facsimile

By: _____
       Cabrach J. Connor
       State Bar No. 24036390
       Email:  cconnor@taylordunham.com
       Jennifer Tatum Lee
       State Bar No. 24046950
       Email:  jtatum@taylordunham.com
**ATTORNEYS FOR PLAINTIFF BLUE SKY NETWORKS, LLC**